Delbert R. LUKENSMEYER and Marjorie Lukensmeyer, Plaintiffs,

v.

UNITED STATES of America, Defendants.

No. 71-C-26.

United States District Court, E. D. Wisconsin.

Jan. 18, 1972.

Prieve, Gerlach & Meyer by Charles E. Prieve, Milwaukee, Wis., for plaintiffs.

David J. Cannon, U. S. Atty., and Richard J. Sideman, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiffs in this action seek the refund of $2,317.62 in assessed income taxes and interest paid by them to the internal revenue service. The defendant has moved for summary judgment, and both sides have filed briefs and affidavits with the court.

. Northern Discount Co. ("Northern") was formed in Racine, Wisconsin, on March 13, 1956, to conduct a finance business in conjunction with the automobile dealership of Northern's president. One hundred shares of stock were issued by the corporation to the three persons including the plaintiff Delbert Lukensmeyer, who comprised the corporation's board of directors; Mr. Lukensmeyer purchased ten shares of stock, and the other two shareholders each purchased 45 shares. In addition, Mr. Lukensmeyer was named Northern's vice-president.

In the fall of 1964, Money Corporation ("Money") was organized in Racine to engage in the automobile finance and small loan business. One hundred shares of stock were issued to the same persons who owned stock in Northern; each person purchased stock in Money in an amount equal to the number of shares held by him in Northern and assumed the same position on Money's board of directors as held by him on Northern's board.

On November 29, 1965, Northern's three shareholders voted to dissolve the corporation and, on the same day, the board of directors resolved to pay a "first liquidating dividend" of $35,000. Four other "liquidating dividends" were distributed during 1966 and 1967 and, in all, $122,684.54 was paid to Northern's

three shareholders. On their tax returns for 1965, 1966, and 1967, the plaintiffs reported the amounts of $3500, $6800, and $1968.44, respectively, as capital gains distributions received upon the complete liquidation of Northern. The district director of internal revenue, however, determined that the liquidating dividends should be reported as ordinary dividends and assessed the plaintiffs the amount for which they now seek a refund.

The affidavit in support of the defendant's motion for summary judgment sets forth a number of facts upon which the defendant bases its contention that what the plaintiffs aver was a "liquidation" of Northern was, in reality, a corporate reorganization within the meaning of 26 U.S.C. §§ 354(b) (1) (A) and 368(a) (1) (D). The defendant argues that Money " 'acquire[d] substantially all of the assets' of . . . [Northern] . . . and, indeed, acquired every asset that had contributed to the success of Northern Discount."

26 U.S.C. §§ 354 and 368 provide, in part:

"Section 354. Exchanges of stock and securities in certain reorganizations

(a) General rule.—

(1) In general.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

.    .    .    .    .    .

(b) Exception.—

(1) In general.—Subsection (a) shall not apply to an exchange in pursuance of a plan of reorganization within the meaning of section 368(a) (1) (D), unless—

(A) the corporation to which the assets are transferred acquires substantially all of the assets of the transferor of such assets; and

(B) the stock, securities, and other properties received by such transferor, as well as the other properties of such transferor, are distributed in pursuance of the plan of reorganization.

"Section 368. Definitions relating to corporate reorganizations

(a) Reorganization.—

(1) In general.—For purposes of parts I and II and this part, the term 'reorganization' means—

.    .    .    .    .    .

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356 . . . .."

There is no dispute that distributions in connection with a corporate reorganization are treated as ordinary income and must be differentiated from the sums distributed upon a complete corporate dissolution. However, the plaintiffs contend that an issue of fact exists with respect to whether Money is in reality Northern in altered corporate form; in particular, they point to a cash reserve maintained by Northern in a Milwaukee bank which was not part of the assets transferred to Money. In paragraphs six and seven of his affidavit in opposition to the defendant's mo-

tion for summary judgment, Mr. Lukensmeyer states:

"6. When a conditional sales contract was sold [by Northern] to the Marshall & Ilsley Bank, a reserve against such contract had to be established pursuant to the agreement between Northern and Marshall & Ilsley Bank. That reserve as of January 31, 1965, was $138,589.26. The reserve account had to be built until it equalled 10% of all contracts outstanding.

"7. The reserve account of Northern could not be withdrawn or otherwise used by Northern except and until the total account balance which was collateralized by such reserve had been collected. Only as Northern liquidated the accounts without selling new sales contracts to the Marshall & Ilsley Bank did the reserve become available. This reserve was released to Northern gradually as the balance of the sales account decreased. At no time was the reserve account used against contracts sold to the Marshall & Ilsley Bank by Money."

Without specifically referring to the cash reserve described in Mr. Lukensmeyer's affidavit, the defendant argues in its brief that those courts that have considered the effect of 26 U.S.C. §§ 354 and 368 "have determined whether the successor corporation 'acquire[d] substantially all of the assets' of the predecessor by taking principally into account the assets significant in, and needed by, the on-going business rather than by employing an undifferentiating arithmetic measure that gave equal weight to extraneous assets and unneeded cash. . . ."

Many of the facts set forth in the affidavit in support of the defendant's motion for summary judgment militate in favor of a finding that Money represents Northern in reorganized corporate form. For example, it appears that in mid-1965 Northern's employees were transferred to Money and that, on several occasions, Money's business correspondents were given the same address as had once been used by Northern. The fact that Money's shareholders and officers are the same as were Northern's has already been noted. While its automobile finance business is conducted largely in connection with the same automobile dealership with which Northern was tied, the scope of Money's operation ostensibly is larger than Northern's.

Notwithstanding the similarities between the two corporations and the accompanying appearance of "reincorporation," I am of the opinion that the defendant's motion for summary judgment must be denied. I am persuaded that a factual issue exists with respect to whether Money acquired "substantially all of the assets" of Northern. A party who seeks summary judgment bears the burden of showing that there is no genuine issue of material fact to be tried. I believe that the defendant in the case at bar has not met that burden. "In deciding whether there is an issue of material fact in a case, all doubts must be resolved against the party asking for a summary judgment." Greenebaum Mortgage Co. v. Town and Garden Associates, 385 F.2d 347, 349 (7th Cir. 1967).

Although the plaintiffs urge that the government has the burden of proof to establish that this was a reorganization with ordinary income consequences, it is my belief that at the trial the plaintiffs will have the burden of proving that the distributions in question qualify for capital gains treatment. Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932); Zeeman v. United States, 395 F.2d 861, 865 (2d Cir. 1968).

Therefore, it is ordered that the defendant's motion for summary judgment be and hereby is denied.